# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7504 | **DATE** | 8/15/2001 |
| **CASE TITLE** | Joyce Smith vs. Larry Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, both parties' Rule 56 motions for summary judgment are denied, but Smith's alternative motion to remand is granted. This Court strongly urges Commissioner to transfer the case to a different ALJ on remand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 16 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 8/15/2001 | |
| SN | courtroom deputy's initials | 01 AUG 15 PM 3:57 | date mailed notice |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 16 2001

JOYCE SMITH,                    )
                                )
            Plaintiff,          )
                                )
        v.                      )    No. 00 C 7504
                                )
LARRY MASSANARI, Acting         )
Commissioner of the Social      )
Security Administration,        )
                                )
            Defendant.          )

MEMORANDUM OPINION AND ORDER

Joyce Smith ("Smith") seeks judicial review pursuant to the Social Security Act (the "Act," more specifically 42 U.S.C. §§405(g) and 1383(c)(3)[1]) of the final decision of Commissioner of Social Security Larry Massanari ("Commissioner") denying Smith's claim for basic disability insurance benefits and supplemental security income ("SSI") disability benefits (collectively "disability benefits") under Titles II and XVI of the Social Security Act, Sections 416, 423 and 1381. Both sides have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and Smith has alternatively moved to remand for further proceedings. For the reasons stated in this memorandum opinion and order, both parties' Rule 56 motions for summary judgment are

---

[1] All further statutory references will take the form "Section--," using the Title 42 numbering rather than the Act's internal numbering. All 20 C.F.R. references will be cited "Reg. §--." All Social Security Rulings will be cited "SSR--." Finally, Smith's and Commissioner's respective memoranda will be cited "S. Mem.--" and "C. Mem.--."

denied, but Smith's alternative motion to remand is granted.

## Background[2]

Smith filed applications for disability benefits on October 16, 1997, asserting that she had been disabled since June 30, 1997 (R. 96, 101, 164-67).[3] Smith's initial SSI application said that her disabling condition was "severe allergies" and also claimed that she suffered from a "bad back" (R. 96, 101). Those applications were denied both initially and upon reconsideration (R. 77-80, 83-85, 169-72, 174-76). Smith then requested and received a hearing (the "Hearing"), which took place before Administrative Law Judge ("ALJ") Charles Frisch on May 13, 1999 (R. 36, 38). By that time the "evidence of record reflect[ed] that [Smith was] subject to degenerative disc disease of the spine, urinary incontinence, obesity, and asthma/allergies" (R.19).

On June 19, 1999 ALJ Frisch issued a decision denying Smith's disability benefits requests (R. 18-30). That decision found (1) that Smith was not disabled because she could perform her past relevant work at step four of the sequential disability analysis (R. 27) and, alternatively, (2) that she could perform a significant number of jobs in the national economy at step five

---

[2] What follows in the next sections of the text is drawn from the administrative record (cited "R. --").

[3] Smith's basic benefits application is not contained in the record (C. Mem. 1).

2

(R. 29).

Smith filed a request for review with the Appeals Council on July 21, 1999 (R. 13). That request was denied on October 13, 2000, making the ALJ's decision the final decision of Commissioner (R. 7). On November 29, 2000 Smith filed this action, raising a variety of challenges to ALJ Frisch's findings at steps four and five of the sequential disability analysis.

## No Rational Connection

To enable a court to assess the reasonableness of an agency decision, the agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" (Madison Gas & Elec. Co. v. United States EPA, 25 F.3d 526, 529 (7th Cir. 1994), quoting earlier Supreme Court decisions). Here ALJ Frisch "failed to build a bridge from the evidence to his conclusion" (Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000)), so that this case (like Green) must be and is remanded.

Judicial opinions in the social security area (including those issued by this Court) typically contain a lengthy recital of the factual record before the ALJ, in principal part because the question for decision is most often whether the ALJ and hence Commissioner have reached a result supported by "substantial evidence." Such opinions also customarily set out a step-by-step discussion of the ALJ's reasoning that reflects the sequential

3

disability analysis applicable to such cases. But this case does not call for such extended treatment, for even a cursory glance at the administrative record and the ALJ's opinion reveals flaws so basic that no detailed examination is needed.[4] Instead this opinion (1) will focus on a few of the most basic problems contained in ALJ Frisch's opinion that call for remand and (2) will seek to point to a better handling of Smith's case by an ALJ after it is sent back.

### Residual Functional Capacity ("RFC")[5]

Perhaps the most obvious and troubling deficiency in ALJ Frisch's opinion is his formulation of Smith's RFC. That determination suffers from at least two basic problems:

  1. It contains conflicting factual determinations as to two of Smith's impairments.

  2. It does not account properly for the extent to which Smith's obesity and back problems affect her RFC.

As to the first of those problems, here is one version of

---

[4] Indeed, because of the murky nature of ALJ Frisch's opinion and the administrative record as a whole, any attempt to explicate the record and to fathom ALJ Frisch's thought process is both difficult and ultimately unenlightening.

[5] Marcus v. Sullivan, 926 F.2d 604, 608 (7th Cir. 1991) repeats the SSR 83-10 definition of RFC:

> [a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).

4

Smith's RFC according to ALJ Frisch, contained in the "<u>FINDINGS</u>" section of his opinion (R. 29):

> At all times since June 30, 1997, the claimant has retained the residual functional capacity for unskilled, medium exertional level work allowing access to a rest room, no concentrated exposure to cold or heat, humidity, fumes, odors, dust, gases, or poor ventilation, no work at heights, no climbing ladders, ropes, scaffolds, or stairs.

Under that version of Smith's RFC, ALJ Frisch considered that Smith needed access to a bathroom once each hour because of her urinary incontinence[6] and that her asthma and allergies also rendered her unable to work in environments with concentrated exposure to allergens such as dust.

Other portions of the ALJ's opinion, however, advance findings much at odds with what has just been described. Consider, for example, the following passages (R. 23, 24, 25):

> The undersigned has considered that the claimant would be able to watch her liquid intake, use urinary incontinence pads as she currently does, and possibly utilize medication to control her urinary incontinence. Further, the claimant admitted that she could utilize allergy/asthma medication to limit the effects of and/or avoid allergic reaction and/or asthma attacks.

\*     \*     \*

---

[6] Although the phrase "allowing access to a restroom" is imprecise of itself, another portion of the ALJ's opinion said that Smith's "residual functional capacity has been reduced to allow for her alleged need to utilize a bathroom once per hour" (R. 24). Despite that use of the word "alleged," the ALJ did not suggest (let alone find) any lack of credibility on Smith's part--indeed, he expressly found that urinary incontinence was one of the several problems that caused her to be "severely impaired" (R. 28).

5

> The claimant's use of medication is consistent with her diagnosed conditions, but inconsistent with assertions of disability....Further, there is no evidence in the record with respect to consistent use of urinary incontinence medications, although the claimant alleges that she has covered her furniture, reduced church attendance, and avoided social activities due to urinary incontinence.
>
> \* \* \*
>
> The undersigned finds it significant to note that no treating and/or examining medical professional imposed functional limitations on the claimant and the claimant can utilize medication to avoid or deter allergy and/or asthma reactions.

Those statements and ALJ Frisch's ultimate conclusion that Smith was not disabled are consistent only with a belief that Smith <u>could</u> control her incontinence and her asthma.[7]

Though it is bizarre to find material factual disputes within the same opinion, they are present here as to Smith's incontinence and environmental restrictions. Hence neither party is entitled to summary judgment, for in each instance the party opposing summary judgment is entitled to the benefit of the most

---

[7] Although his reasoning is cryptic, ALJ Frisch purported to rely on the testimony of Vocational Expert Thomas Grzesik ("Grzesik") in reaching his determination that Smith was not disabled (R. 26-28). Grzesik testified that an individual who needed to use the bathroom once per hour could not do retail store work as it is performed in the national economy (R. 71), and he also opined that a person who needed to avoid moderate exposure to allergens like dust, perfume and fabrics could not perform such jobs (R. 70). Thus ALJ Frisch's conclusion that Smith <u>could</u> perform her past work in retail sales at step four could rest only on a view that Smith could control her asthma and did not need hourly access to a bathroom.

6

favorable factual scenario posed by the evidence, coupled with all reasonable inferences.[8] Their cross-motions for summary judgment are accordingly denied, and this case is remanded for a definitive assessment of the extent to which those and other impairments limit Smith's ability to work.

Although ALJ Frisch's conflicting factual determinations as to Smith's incontinence and environmental restrictions thus require remand in any event, there is another aspect of his RFC determination that requires another look on remand: the impact of Smith's back condition and obesity on her RFC. ALJ Frisch did not adequately assess the aggregate effect of all of her impairments, as he was required to do (see Green, 204 F.3d at 782, citing--in addition to earlier caselaw--Section 423 (d)(2)(B) and Regs. §§404.1523 and 416.923). On remand the assigned ALJ should consider those aspects in relation to Smith's RFC, and he or she is specifically instructed to consider SSR 00-3p in doing so.

### Medical Record Not Sufficiently Developed

Given ALJ Frisch's plainly unsatisfactory account of Smith's

---

[8] That conflict in ALJ Frisch's factual findings is mirrored in the parties' submissions. Smith claims that ALJ Frisch found that her urinary incontinence required her to use the bathroom once an hour (S. Mem. 10). On the other hand, Commissioner--without even acknowledging the ALJ's contradictory statements--contends that ALJ Frisch "reasonably determined that Plaintiff could utilize urinary incontinence pads and medication to control her incontinence" (C. Mem. 13).

7

RFC, there is no need to explore (as in the normal "substantial evidence" analysis) the extent to which his conclusions might otherwise have been supportable. But even a brief review of the ALJ's opinion reveals that a number of those conclusions were not justified. Perhaps that is unsurprising, given the overall unsatisfactory nature of the medical record.

Little if any expert medical opinion in the record that sheds light on the extent to which Smith's impairments are disabling. Most of the medical "evidence" in the record takes the form of cursory handwritten notes that are barely legible (if at all). And at best that evidence is almost entirely descriptive as to Smith's impairments, providing no analysis as to whether and to what extent they would restrict her.[9] Rather than attempting to bridge those gaps by ordering more medical evidence or obtaining medical testimony at the Hearing, ALJ Frisch impermissibly drew his own conclusions, on several occasions drawing inferences against Smith where there was no supporting medical evidence[10] or misrepresenting Smith's

---

[9] That says nothing of the fact that there is almost no medical evidence at all that addresses Smith's urinary incontinence. On that subject, the only medical evidence available is Dr. Cynthia Yango's hieroglyphic-like treatment notes (R. 154, 157). But those notes really say nothing at all as to how often Smith would need access to a restroom because of her condition.

[10] For example, apparently as a reason for finding that Smith's degenerative disc disease was not disabling, the ALJ observed (R. 22):

testimony.[11]

Those errors must also not be repeated on remand. Instead the assigned ALJ should develop the record more fully to permit an informed decision based on medical evidence as to whether Smith's impairments are disabling.

## Conclusion

Because neither party is entitled to judgment as a matter of law, their cross-motions for summary judgment are denied. Smith's alternative motion to remand is granted under sentence four of Section 405(g) (see <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 97-102 (1991) for these purposes:

    1.    There must be an adequate development of the

---

> With respect to claimant's alleged back pain, there is no evidence in the record that the claimant has had x-rays, an MRI, or CT scan of her back or that surgery has been recommended.

ALJ Frisch did not cite any medical opinions to support that finding--he simply relied on evidentiary gaps in the record. But as taught by such cases as <u>Smith v. Apfel</u>, 231 F.3d 433, 437 (7th Cir. 2000), the ALJ has a duty to develop a full and fair record. If the ALJ was concerned that the medical evidence was insufficient to make the disability determination, he should have ordered what was necessary (<u>id</u>.; accord, <u>Clifford v. Apfel</u>, 227 F.3d 863, 873 (7th Cir. 2000)).

[11] For example, without citation to the record the ALJ concluded at one point that Smith can "utilize medication to avoid or deter allergy and/or asthma reactions" (R. 25). His apparent basis for that conclusion was Smith's testimony at R. 61. But Smith actually testified that she was no longer on Claritin because her doctor was no longer prescribing it to her and that since that time her attacks lasted "[t]wo or three days, at times," depending on the allergen (R. 61).

9

medical record to allow for a reasoned determination as to Smith's RFC.

2. There must also be adequate articulation of Smith's RFC in light of that medical evidence, taking into account Smith's back problems, obesity, respiratory impairments and her urinary incontinence. That RFC determination should consider her impairments individually and collectively.

3. If the ALJ seeks to rely on the testimony of a vocational expert in response to hypothetical questions, the hypotheticals must <u>clearly</u> set forth Smith's impairments to the extent they are supported by the medical record.[12]

One final point: Given all that has been said here, it is an understatement to find it highly doubtful that the same ALJ could carry out the obligation to produce the required full and fair record on remand. Just as our Court of Appeals did in <u>Sarchet v. Chater</u>, 78 F.3d 305, 309 (7th Cir. 1996)), and because of the same concerns, this Court strongly urges Commissioner to transfer the case to a different ALJ on remand (see also, in a

---

[12] ALJ Frisch purported to rely on Grzesik's testimony at steps four and five of the disability determination. But those hypotheticals were not clearly presented to the vocational expert, so that it is difficult to know precisely what the hypothetical claimant's impairments were (see R. 71-72). Because the hypothetical question upon which vocational testimony is predicated "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record" (<u>Herron v. Shalala</u>, 19 F.3d 329, 337 (7th Cir. 1994)), the job must be done better the second time around to enable an informed review.

10

materially less egregious situation, a like recommendation in Clifford, 227 F.3d at 874).

                                                */s/ Milton I. Shadur*
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: August 15, 2001